UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | |
|---|---|
| **CASE NO.:** CV 15-01557 SJO (ASx) | **DATE:** May 5, 2015 |
| **TITLE:** Cinedigm Corp. et al. v. Gaiam Inc. et al. | |

========================================================================
**PRESENT:** THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE

Victor Paul Cruz
Courtroom Clerk

Not Present
Court Reporter

**COUNSEL PRESENT FOR PLAINTIFFS:**

Not Present

**COUNSEL PRESENT FOR DEFENDANTS:**

Not Present

========================================================================
**PROCEEDINGS (In Chambers): ORDER DENYING PLAINTIFFS' MOTION TO REMAND** [Docket No. 11]**, DENYING DEFENDANTS' MOTION TO STAY OR DISMISS** [Docket No. 13]**, DENYING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** [Docket No. 14]**, AND GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** [Docket No. 16]

This matter is before the Court on Plaintiffs Cinedigm Corp. and Cinedigm Entertainment Holdings LLC's (collectively, "Plaintiffs") Motion to Remand Case to Los Angeles Superior Court, filed March 12, 2015, Plaintiffs' Motion for Preliminary Injunction, filed March 13, 2015, Defendants Gaiam Americas Inc. and Gaiam Inc.'s (collectively, "Defendants") Motion to Stay Pending Arbitration, filed March 13, 2015, and Defendants' Motion for Judgment on the Pleadings, filed March 13, 2015. An Opposition to Plaintiffs' Motion to Remand was filed on March 20, 2015, and Oppositions to the other Motions were filed on March 23, 2015. Replies to all motions were filed March 30, 2015. The Court found the matter suitable for disposition without oral argument and vacated the hearings set for April 13, 2015. *See* Fed. R. Civ. P. 78(b). For the following reasons, the Court **DENIES** Plaintiffs' Motion to Remand, Defendants' Motion to Stay or Dismiss, and Defendants' Motion for Judgment on the Pleadings, and **GRANTS** Plaintiffs' Motion for Preliminary Injunction.

I.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs' Complaint alleges as follows. On or about October 22, 2013, Cinedigm and Gaiam entered into the Membership Interest Purchase Agreement ("MIPA"), whereby Cinedigm agreed to purchase Gaiam 's video distribution business ("Media Co.") for $51.5 million. (Compl. ¶¶ 2, 9, ECF No. 1-1.) After the transaction closed, Gaiam was required to transition the business to Cinedigm pursuant to a Transition Services Agreement ("TSA"), and the parties were required to work together to determine the appropriate value of Media Co.'s working capital as of the closing date. (Compl. ¶ 9.)

On December 16, 2013, Gaiam, without consultation with Cinedigm as is required in the MIPA, initially estimated that Media Co.'s working capital should be valued at $7 million more than the

$20 million target value to which the parties had agreed in the MIPA, which would mean that Cinedigm would be required to pay Gaiam an additional $7 million on top the $51.5 million purchase price. (Compl. ¶ 10.) Cinedigm disputes these working capital calculations as a sham. (Compl. ¶ 11.) Cinedigm further alleges that Gaiam has defrauded it of millions of dollars in cash and misappropriated millions of dollars in accounts receivable, and is pursuing claims in arbitration for fraud (the "AAA Arbitration"). (Compl. ¶¶ 12-14, 17.)

Cinedigm is also attempting to pursue a separate Working Capital Arbitration pursuant to Section 2.04 of the MIPA, which has already been initiated by the parties. (Compl. ¶¶ 15-16.) Under the MIPA, Cinedigm is entitled to have the Working Capital Arbitration completed within approximately 45 days. (Compl. ¶ 16.) Gaiam allegedly refuses to proceed with the Working Capital Arbitration until after the parties have completed the AAA Arbitration. (Compl. ¶¶ 18.)

The MIPA provides specific procedures for calculation of working capital after the transaction closes. (*See* Compl. Ex. A ("MIPA") § 2.03.) The MIPA also provides specific "Closing Working Capital Disagreement Procedures" specifying that certain negotiations are to take place if there is a disagreement as to working capital and specifying that arbitration by an accounting firm is to take place if the parties still cannot reach an agreement. (MIPA § 2.04.) The MIPA contains an arbitration clause but also provides for injunctive relief: "[t]he only exception to this arbitration provision, and the mediation provision herein, shall be an action by either party seeking preliminary injunctive relief in a court of competent jurisdiction." (MIPA ¶¶ 9.08, 9.11.)

Despite several months of negotiations and participation recently in a two-day mediation which occurred on January 13 and 16, 2015, Gaiam and Cinedigm have not been able to agree upon the proposed forms of Closing Balance Sheet and Closing Working Capital Statement. (Compl. ¶ 21.) Gaiam maintains that the closing working capital exceeds the working capital target by roughly $7 million, whereas Cinedigm calculates the closing working capital to be several million dollars less than the closing working capital target. (Compl. ¶ 21.) Because the parties cannot agree on the proper calculation of the closing working capital despite extended efforts to negotiate a resolution, they are required under the MIPA to proceed with a Working Capital Arbitration to resolve their dispute on an expedited basis in accordance with the "Closing Working Capital Disagreement Procedures" provided in Section 2.04 of the MIPA. (Compl. ¶ 21.)

In late 2014, the parties agreed that Troy Dahlberg, a partner at KPMG, would serve as the Accounting Arbitrator in connection with the Working Capital Arbitration. (Compl. ¶ 22.) By letter dated January 23, 2015, Cinedigm proposed to the Accounting Arbitrator and Gaiam a schedule for completing the Working Capital Arbitration with hearings in March 2015. (Compl. ¶ 22.) On January 26, 2015, Gaiam responded that it would not proceed with the Working Capital Arbitration because it would be impossible to proceed with that arbitration until the claims asserted in the AAA Arbitration had been resolved. (Compl. ¶ 23.) Gaiam argues that the working capital dispute

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.: CV 15-01557 SJO (ASx)          DATE: May 5, 2015

depends upon the parties' different interpretations of the MIPA, which cannot be resolved until discovery in the AAA Arbitration has been completed. (Compl. ¶ 23.)

On February 11, 2015, Cinedigm filed the instant action in the Superior Court of California, County of Los Angeles. On March 4, 2015, Gaiam removed the action to this Court, claiming that diversity jurisdiction existed under 28 U.S.C. § 1332. On March 17, 2015, Gaiam filed an Amended Notice of Removal, clarifying the citizenship of the parties. (Am. Notice of Removal, ECF No. 19.)

II.     DISCUSSION

   A.     Motion to Remand

Plaintiffs move to remand this action for lack of subject matter jurisdiction. "It is a fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock W., Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989) (citation omitted). Lack of subject matter jurisdiction may be raised by any party at any time, and it is never waived. *United States v. Cotton*, 535 U.S. 625, 630 (2002); *Miguel v. Country Funding Corp.*, 309 F.3d 1161, 1163-64 (9th Cir. 2002). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also Wood v. City of San Diego*, 678 F.3d 1075, 1082 (9th Cir. 2012).

An action is removable to federal court only if it could have been brought there originally. 28 U.S.C. § 1441(a). The Ninth Circuit has held that courts must "strictly construe the removal statute against removal jurisdiction" and reject federal jurisdiction "if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). "The strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Id.* (internal quotation marks omitted).

Federal courts have subject matter jurisdiction when an action presents a federal question under 28 U.S.C. § 1331, or when diversity of citizenship exists under 28 U.S.C. § 1332. Defendants' Amended Notice asserts that the Court has federal diversity jurisdiction under 28 U.S.C. § 1332. (Am. Notice ¶ 3.) A defendant may remove an action on the basis of diversity jurisdiction if (1) there is complete diversity between the adverse parties in the action, and (2) the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). Plaintiffs do not dispute that the complete diversity requirement is met (*see generally* Mot.), but argues that the amount in controversy does not exceed $75,000.

The object of the litigation here is Plaintiffs' claim for injunctive relief requiring the Working Capital Arbitration to proceed immediately. Relying principally on an unpublished district court case, *PeriCor Therapeutics, Inc. v. Am. Arbitration Ass'n*, No. CV 13-00049 GAF (JCGx), 2013 WL

| CASE NO.: | CV 15-01557 SJO (ASx) | DATE: | May 5, 2015 |
|---|---|---|---|

654123 (C.D. Cal. Feb. 20, 2013), Plaintiffs argue that this relief is "too speculative and immeasurable to satisfy the amount in controversy requirement." *Pericor*, 2013 WL 654123, at *2-3. *PeriCor*, however, dealt with a dispute over which parties could properly determine who could serve as an arbitrator in the case, a question significantly removed from the underlying claim. *Id*. at *2.

Here, the principal dispute is whether the parties are required to arbitrate now or whether they may arbitrate later. The dispute involves a difference of $7 million which, depending on the outcome of the arbitration, would have to be paid under MIPA. This amount greatly exceeds the statutory minimum. *See Zibo Zhongshi Green Biotech Co. v. Pac. Chem. Int'l, Inc.*, No. 13-CV-4780 ODW JCx, 2013 WL 3872090, at *1 (C.D. Cal. July 24, 2013); *Theis Research, Inc. v. Brown & Bain*, 400 F.3d 659, 661 (9th Cir. 2005). Accordingly, diversity jurisdiction is proper here, and Plaintiffs' Motion to Remand is **DENIED**.

  B. Motion to Stay or Dismiss

    1. Arbitrability

Defendants move to stay or dismiss the action under 9 U.S.C. § 3 because the issue is being decided in the currently pending AAA Arbitration. The court must stay a proceeding if the proceeding is referable to arbitration under a written arbitration agreement. 9 U.S.C. § 3. Defendants argue that the question of whether the Working Capital Arbitration must occur is a question of arbitrability, which must be decided in the AAA Arbitration pursuant to the applicable arbitration clause. The arbitration clause reads as follows:

> This Agreement shall be governed by and construed in accordance with. the domestic laws of the State of New York without giving effect to any choice or conflict of law provisions. If a dispute arises out of or relates to this Agreement, or the breach hereof, and if the dispute cannot be expeditiously settled through negotiation, the Parties agree to first try in good faith, for a period of thirty (30) days after written notice of a request for mediation to settle the dispute by mediation administered by the American Arbitration Association under its Commercial Mediation Procedures before resorting to binding arbitration; provided, however, that failure of the mediation to occur or to be completed in the thirty (30) days following a request for mediation shall not preclude either party from then proceeding with arbitration. Any controversy or claim arising out of or relating to this Agreement, or the breach thereof. shall be settled by . arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rule before a single arbitrator in New York City, and judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. The prevailing party in any such arbitration shall be entitled to a payment from the other party of the reasonable

CASE NO.: CV 15-01557 SJO (ASx)          DATE: May 5, 2015

> attorneys' fees (excluding any in house attorney fees and expenses) and other reasonable arbitration out of pocket expense of the prevailing party. The decision arrived at by the arbitrator shall be binding upon all the parties to the arbitration and no appeal shall lie therefrom, except as provided by the Federal Arbitration Act. **This arbitration procedure is intended to be the exclusive method of resolving any claim or dispute arising out of or related to this Agreement, including the applicability of this Section 9.08, other than disputes arising under Section 2.04. The only exception to this arbitration provision, and the mediation provision included herein, shall be an action by either party seeking preliminary injunctive relief in a court of competent jurisdiction.**

(MIPA § 9.08 (emphasis added)). Defendants argue that the exceptions laid out do not apply here because this is a question of arbitrability—in other words, the applicability of Section 9.08—and thus this matter must be resolved through the arbitration procedure. Defendants further argue that this exception does not apply because there may be legal disputes, such as whether working capital claims are time barred, that cannot be decided by an accounting firm conducting a Working Capital Arbitration. (Mot. 14.)

The Court finds that, because of these exceptions, the question of a working capital arbitration is a separate matter that need not be decided in the AAA Arbitration. This matter is a dispute arising under Section 2.04, and this action is a suit seeking preliminary injunctive relief. Thus, the question of whether and when a Working Capital Arbitration should take place is clearly not subject to arbitration under Section 9.08 because it falls under two independent exceptions to the arbitration clause. While the parties intended AAA to rule on arbitrability for most aspects of the agreement, the MIPA does not provide for the AAA to rule on the arbitrability of disputes under Section 2.04 such as the Working Capital Arbitration.

    2.    <u>Waiver</u>

Further, Defendants argue that Plaintiffs have waived any right to pursue this action by failing to object to the AAA's jurisdiction in the pending arbitration. Defendants filed their answering statement in the AAA Arbitration on January 29, 2015, and another Answer in the AAA Arbitration on February 5, 2015, and did not object to AAA's jurisdiction then. A party must object to the jurisdiction of the arbitrator or the arbitrability of a claim no later than the filing of the answering statement. AAA Commercial Arbitration Rule R-7(c). The claim to which Defendants argue Plaintiffs should have objected seeks "a declaration that Cinedigm's challenges to Gaiam's calculation of the Closing Working Capital are untimely and that, as a result, Gaiam is entitled to receive $6,752,340 as the Post-Closing Adjustment Amount pursuant to Section 2.03 of the MIPA." (Decl. of Randall Jackson Ex. A ("Demand for Arbitration") ¶ 45, ECF No. 13-2.) The Demand for Arbitration, however, explicitly states that the working capital disputes are "to be decided by the Accounting Arbitrator." (Demand for Arbitration ¶ 45 n.3.) Thus, because the

CASE NO.: **CV 15-01557 SJO (ASx)**        DATE: **May 5, 2015**

Demand for Arbitration did not ask the AAA Arbitrator to determine whether or not the Working Capital Arbitration to take place, Plaintiffs were under no obligation to object.

Plaintiffs also note that the parties had agreed in 2014 that Troy Dahlberg would serve as the Working Capital Arbitrator and that Cinedigm had sent a letter on January 23, 2015, proposing a schedule for completing the Working Capital Arbitration. Given all these facts, it is clear that Plaintiffs did not waive the right to pursue this action. Accordingly, Defendants' Motion to Stay or Dismiss Action Pursuant to 9 U.S.C. § 3 is **DENIED**.

  C.  <u>Motion for Judgment on the Pleadings</u>

    1.  <u>Legal Standard</u>

Rule 12(c) provides that "[a]fter the pleadings are closed–but early enough not to delay trial–a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The principal difference between motions filed pursuant to [Federal Rule of Civil Procedure 12(b) ("Rule 12(b)")] and Rule 12(c) is the time of filing"; the two types of motions are "functionally identical." *Dworkin v. Hustler Magazine Inc.,* 867 F.2d 1188, 1192 (9th Cir. 1989). Thus, as with a motion to dismiss pursuant to Rule 12(b), for the purposes of adjudicating a 12(c) motion, the factual allegations of the non-moving party are accepted as true, and all inferences reasonably drawn from those facts must be construed in favor of the non-moving party. *See Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 896 F.2d 1542, 1550 (9th Cir.1989); *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009) (citation omitted); *see also Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 554-55 (2007) (standard for 12(b)(6) motion); *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (same). Judgment on the pleadings is appropriate when, accepting all material facts in the complaint as true, the moving party is entitled to judgment as a matter of law, *Fleming*, 581 F.3d at 925 (citations and footnote omitted), and no set of facts in support of his claim would entitle him to relief. *Sun Sav. & Loan Ass'n v. Dierdorff,* 825 F.2d 187, 191 (9th Cir. 1987).

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Determining whether a complaint states a plausible claim for relief" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679 (citation omitted). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." *Id.* However, the plaintiff must allege "plausible grounds to infer" that its claims rise "above the speculative level." *See Twombly,* 550 U.S. at 555-56.

    2.  <u>Arbitration in New York</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.: CV 15-01557 SJO (ASx)    DATE: May 5, 2015

Defendants next move for judgment on the pleadings or, in the alternative, transfer to the Southern District of New York on the basis that the working capital arbitration must proceed in New York City. When a court compels arbitration under the FAA, "[t]he hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed." 9 U.S.C. § 4. Plaintiffs respond that they are not seeking to compel an arbitration under the FAA, but that they merely seek to enforce the contractual terms of the MIPA, and that they also do not seek to compel the Working Capital Arbitration to proceed in New York. While the MIPA requires that the AAA Arbitration be conducted in New York, it is silent as to the location of the Working Capital Arbitration. (*See* MIPA §§ 9.08, 2.04.) Plaintiffs state that a Working Capital Arbitration in Los Angeles would be acceptable. (Opp'n 18.) Even though the parties have selected Mr. Dahlberg, who works in New York City, as the arbitrator, there is no reason to believe that he could not travel to Southern California to conduct the arbitration, or that another local arbitrator could not be found.

Defendants also request transfer to the Southern District of New York. For the convenience of parties and witnesses and in the interest of justice, a district court may transfer a civil case to any other district where it could have originally been filed. 28 U.S.C. § 1404(a). Under 28 U.S.C. § 1404, a court must conduct a two part analysis to determine if transfer is appropriate. *Kierstead v. Experian Info. Solutions, Inc.*, No. CV 10-1694, 2011 WL 1375361, at *1 (C.D. Cal. Apr. 11, 2011). As a preliminary matter, a court must determine whether the action could have originally been filed in the transferee court. *Id.* Second, the court "performs an 'individualized, case-by-case determination of convenience and fairness' to determine whether the case should be transferred." *Id.* (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). The moving party bears the burden of showing that transfer is appropriate and must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979); *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

Defendants cite *Barranco v. 3D Sys. Corp.*, No. 13-00411 LEK-RLP, 2014 WL 806263, at *10-11 (D. Haw. Feb. 28, 2014) in support of transfer. *Barranco*, however, dealt with an arbitration for which the arbitration clause specified arbitration in Charlotte, North Carolina. *Id.* at *9, *11. As discussed above, the MIPA does not specify a location for the Working Capital Arbitration.

Here, Defendants have failed to make a strong showing of inconvenience, providing only a brief argument noting that Cinedigm's principal place of business and the related arbitration are in New York City. (Mot. 16.) Plaintiffs' choice of forum is entitled to deference, and Plaintiffs have noted that counsel for both sides in addition to many witnesses are based in Los Angeles. (Opp'n 19.) Accordingly, the Court declines to transfer the instant action to the Southern District of New York.

    3.    <u>Arbitrability and Waiver</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.: <u>CV 15-01557 SJO (ASx)</u>   DATE: <u>May 5, 2015</u>

Defendants first reiterates their argument that Section 9.08 of the MIPA assigns this arbitrability dispute to the AAA Arbitration and their waiver argument. As discussed above in the context of Defendants' Motion to Stay or Dismiss, the Court finds that this dispute need not be referred to the AAA Arbitration.

   4. <u>Breach of MIPA</u>

Defendants also argue that Cinedigm has not alleged that Gaiam breached the MIPA. Defendants argue that Plaintiffs waited over a year before demanding the Working Capital Arbitration and that Plaintiffs' demand was thus arbitrary. The MIPA, however, is clear that "If the Parties do not reach an agreement in writing as to the Final Balance Sheet and Working Capital Statement . . . then the matters disputed by the Parties shall be submitted for arbitration by a nationally-recognized accounting firm that agrees to use its best efforts to complete such arbitration within forty-five (45) days . . . ." (MIPA § 2.04(c).) The Complaint clearly alleges that no such agreement in writing has been reached. (Compl. ¶ 21.) The MIPA does not specify any sort of deadline for initiating the Working Capital Arbitration. (*See generally* MIPA.) Accordingly, the Court finds that a breach of the MIPA has been adequately pled.

   5. <u>Lack of Adequate Remedy at Law and Irreparable Harm</u>

Defendants finally argue that Cinedigm has not adequately alleged the lack of an adequate remedy at law or irreparable harm. Defendants note that the express agreement in the contract that a breach would cause irreparable damage (MIPA § 9.11) is unenforceable. *See, e.g., Firemen's Ins. Co. of Newark v. Keating*, 753 F. Supp. 1146, 1154 (S.D.N.Y. 1990) (holding that parties cannot create a right to injunctive relief merely by including language in a contract). Defendants argue that they could have pursued the same relief from AAA. However, as discussed above, arbitration under Section 2.04 of the MIPA is excluded from the arbitration clause. Defendants argue that this is merely a claim for money damages for which an adequate remedy exists at law and that Cinedigm's delay of more than a year in filing this lawsuit undercuts its claim of irreparable harm. Plaintiffs, however, are suffering the continuing harm of not being able to have their working capital calculations decided by the process agreed upon by contract. An award of money damages by this Court or by the AAA Arbitrator would not provide the same result. Accordingly, the Court **DENIES** Defendants' Motion for Judgment on the Pleadings.

///
///
///
///
///

   D. <u>Motion for Preliminary Injunction</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.:  CV 15-01557 SJO (ASx)          DATE:  May 5, 2015

1. Threshold Issues

Plaintiffs move for a preliminary injunction ordering Defendants to participate in the working capital arbitration. Defendants raise several threshold issues. First, Defendants argue that the request should be referred to the pending AAA Arbitration and that the Court lacks authority to compel arbitration because the arbitrator is in New York City. The Court has addressed these arguments above and finds them without merit.

Next, Defendants argue that Plaintiffs' motion and proposed order fail to comply with Rule 65(d) of the Federal Rules of Civil Procedure. Any injunction must "state the reasons why it issued," "state its terms specifically," and "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. Proc. 65(d)(1). Plaintiffs' Proposed Order states that "IT IS HEREBY ORDERED THAT Defendants Gaiam, Inc. and Gaiam Americas, Inc., participate forthwith with the working capital arbitration in accordance with Section 2.04 of the parties' October 22, 2013 Membership Interest Purchase Agreement." (Proposed Order 2, ECF No. 16-3.) Defendants argue that the issues to be submitted to arbitration, a date by which the arbitration should be completed, or the exact requirements of Section 2.04 of the Agreement all remain unspecified. (Opp'n 10.) The Court finds Plaintiffs' proposed order sufficiently clear. The Proposed Order states specifically that Defendants must participate in the arbitration under the terms of the MIPA, which are included in the motion.

Finally, Defendants argue that Plaintiffs are improperly seeking a permanent injunction. Defendants argue that this is *de facto* a permanent injunction, and the MIPA's arbitration provision only provides an exception for preliminary injunctions. However, as discussed above, the arbitration provision does not apply to the Working Capital Arbitration under Section 2.04. Defendants also make a due process argument, citing an inapposite bankruptcy case which involved inadequate notice that a particular hearing might involve an injunction. *See In re Graves*, 279 B.R. 266, 276 (B.A.P. 9th Cir. 2002). Here, there is no reason to believe Defendants were unaware of the type of relief being sought here by Plaintiffs.

2. Legal Standard

"An injunction is a matter of equitable discretion and is 'an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'" *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, No. CV 12-03856 PJH, 2014 WL 4312021, at *3 (N.D. Cal. Aug. 28, 2014) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).)

To obtain preliminary injunctive relief, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction

CASE NO.: CV 15-01557 SJO (ASx)      DATE: May 5, 2015

is in the public interest. *Winter*, 555 U.S. at 20. In the Ninth Circuit, a preliminary injunction is also appropriate if the plaintiff can show that "serious questions going to the merits and the balance of hardships tips sharply" in the plaintiff's favor. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (quotation marks and citation omitted). These "two alternative formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Raich v. Gonzales*, 500 F.3d 850 (9th Cir. 2007) (internal quotation marks and citation omitted). The Court considers each factor in turn.

      3.      <u>Likelihood of Success of the Merits</u>

The MIPA clearly states:

> If the Parties do not reach an agreement in writing as to the Final Balance Sheet and Working Capital Statement within the timeframes specified under Section 2.04(b) then the matters disputed by the Parties shall be submitted for arbitration by a nationally-recognized accounting firm that agrees to use its best efforts to complete such arbitration within forty-five (45) days and that .is reasonably acceptable to (and independent of) Seller and Purchaser (the "Accounting Firm"), which shall arbitrate the dispute and submit a written statement of its adjudication . . . .

(MIPA § 2.04(c).) Plaintiffs have provided a declaration stating that a dispute amounting to millions of dollars remains as to working capital, and Defendants have provided no evidence to the contrary. (Decl. of Adam Mizel ("Mizel Decl.") ¶¶ 4-10.) Plaintiffs have shown that the appropriate time frames have been met. (Mizel Decl. ¶¶ 4, 7.) The MIPA specifically authorizes injunctive relief compelling Defendants' compliance. (MIPA § 9.11.) Accordingly, the Court finds that a high likelihood of success on the merits.

Defendants argue that the issue is one for arbitration, that the AAA Arbitrator will find that Plaintiffs are barred from proceeding with the Working Capital Arbitration, and that Plaintiffs have unreasonably delayed their request for the Working Capital Arbitration. The Court has addressed all of these arguments above and finds them without merit. In particular, courts have rejected the argument that because a plaintiff also asserted non-working capital claims, a working capital valuation could not proceed. *See Spectris Inc. v. 1997 Milton B. Hollander Family Trust*, 44 Misc. 3d 1215(A), 2014 N.Y. Slip Op. 51131(U) (Sup. Ct. 2014); *McGraw-Hill Companies, Inc. v. School Specialty, Inc.*, 840 N.Y.S.2d 47, 48, 2007 N.Y. Slip Op. 06164 (1st Dep't. 2007).

///
///

      4.      <u>Likelihood of Irreparable Harm to Plaintiffs</u>

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** CV 15-01557 SJO (ASx)            **DATE:** May 5, 2015

Plaintiffs argue that if a preliminary injunction is not issued, they would be deprived of the opportunity to resolve their disputes expeditiously in the Working Capital Arbitration before an expert accountant, as provided for under the MIPA, and thus irreparably harmed. The delay in commencing the Working Capital Arbitration means that Cinedigm's working capital disputes will remain unresolved and millions of dollars will remain in dispute without a forum for resolution. (*See* Mizel Decl. ¶¶ 14-15.) Cinedigm could also be forced to arbitrate these issues in the AAA Arbitration despite the express exclusion of this working capital dispute from the MIPA's arbitration clause. (*See* MIPA § 9.08; Mizel Decl. ¶ 16; Salvaty Decl. Exs. C, E.)

In their Opposition, Defendants again raise the same arguments that were raised in the Motion for Judgment on the Pleadings. For the same reasons detailed above, the Court rejects those arguments here. The Court finds that there is a likelihood of irreparable harm to Plaintiffs if a preliminary injunction does not issue.

    5.    <u>Balance of Equities</u>

In balancing equities between parties, the Court must weigh the effect of different harms to both parties at its own discretion. *See Earth Island Inst. v. Carlton*, 626 F.3d 462, 475 (9th Cir. 2010) ("The assignment of weight to particular harms is a matter for district courts to decide."). The Court also examines the degree to which the parties have acted in good faith, and particularly whether the hardship is self-imposed. *See Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 197 (3d Cir. 1990) (finding that defendant cannot claim to be harmed since its "recalcitrant behavior" of intentionally and illegally appropriating plaintiff's marks despite being warned not to was self-imposed). "When considering the balance of equities, courts will not shy away from issuing preliminary injunctive relief, where to do so would be to aid a second comer who has sought to trade upon the efforts and good will of the first comer." *Moroccanoil, Inc. v. Moroccan Gold, LLC*, 590 F. Supp. 2d 1271, 1281 (C.D. Cal. 2008) (citation and internal quotation marks omitted).

Plaintiffs will suffer irreparable injury absent a preliminary injunction: they would be deprived of the opportunity to resolve their disputes expeditiously in the Working Capital Arbitration before an expert accountant. In contrast, Defendants would suffer no harm from being compelled to follow the procedures to which they contractually agreed. Accordingly, the balance of equities tips sharply in Plaintiffs' favor.

    6.    <u>Public Interest</u>

Finally, the public interest inquiry "primarily addresses impact on non-parties rather than parties." *Sammartano v. First Judicial Dist. Ct., in & for Cnty. of Carson City*, 303 F.3d 959, 974 (9th Cir. 2002) (abrogated on other grounds by *League of Wilderness Defenders/Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755 (9th Cir. 2014)). There is an "emphatic public

policy in favor of arbitral dispute resolution . . . ."  *Toyo Tire Holdings Of Americas Inc. v. Cont'l Tire N. Am., Inc.*, 609 F.3d 975, 980 (9th Cir. 2010.)

Defendants argue that this matter is subject to the AAA Arbitration and thus decision outside of that arbitration proceeding is against the public interest.  However, the Court has repeatedly rejected that argument above.  Here, the Court finds that a swift arbitral resolution of this dispute through the Working Capital Arbitration is in the public interest.

Under both the *Winter* and *Alliance* tests used in the Ninth Circuit, Plaintiffs have demonstrated that the issuance of a preliminary injunction is appropriate.  Accordingly, the Court **GRANTS** Plaintiffs' Motion for Preliminary Injunction.

III.    <u>CONCLUSION</u>

For the foregoing reasons, the Court **DENIES** Plaintiffs' Motion to Remand, Defendants' Motion to Stay or Dismiss, and Defendants' Motion for Judgment on the Pleadings, and **GRANTS** Plaintiffs' Motion for Preliminary Injunction.  The Court hereby **ORDERS** Defendants Gaiam, Inc. and Gaiam Americas, Inc., to participate forthwith with the Working Capital Arbitration in accordance with Section 2.04 of the parties' October 22, 2013 Membership Interest Purchase Agreement.  This action is hereby **STAYED** pending the resolution of the Working Capital Arbitration in the event that any disputes arise during that proceeding.  The Court sets a status conference for Monday, September 21, 2015, at 8:30 a.m.

IT IS SO ORDERED.